UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WILLIAM P. GRAWBADGER,

        Plaintiff,

v.                         Case No: 2:14-cv-432-FtM-29MRM

GEO CARE, LLC, FLORIDA
DEPARTMENT OF CHILDREN AND
FAMILIES, DONALD SAWYER,
Dr., REBECCA JACKSON, Dr.,
FNU KILGO, C.O., FNU FOSSI,[1]
C.O., and JOHN DOE 1-6,

        Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court upon review of the motion

to dismiss filed on behalf of Defendants Donald Sawyer, Rebecca

Jackson, and FNU Fausi (Doc. #28, Motion).  Plaintiff filed a

response in opposition (Doc. #34, Response) and included

attachments (Doc. #34-1), which are not pertinent for review at

the motion to dismiss stage of the proceedings.  This case is ripe

for review.

**I.  Facts**

Plaintiff William Grawbadger, a resident who is civilly

detained at the Florida Civil Commitment Center ("FCCC"),

---

[1] It appears Plaintiff misspelt Defendant FNU Fossi's name on
the Complaint.  Motion at 1.  The Clerk is directed to correct the
spelling of this Defendant's last name to "Fausi" on the docket
and any forms.  Motion at 1.

initiated this action by filing a *pro se* Civil Rights Complaint (Doc. #1, Complaint).  Liberally construing the Complaint, Plaintiff attempts to state a medical deliberate indifference claim, an excessive use of force claim, and a conditions of confinement claim.  Plaintiff names as Defendants GEO Care, LLC, the Florida Department of Children and Families, and the following individuals in their official and individual capacities who work at the FCCC: Doctor Donald Sawyer, Doctor Rebecca Jackson, Correctional Officer Kilgo, Correctional Officer Fausi, and John Does 1-6.

According to the Complaint, on January 29, 2014, Plaintiff attempted to speak with Doctor Jackson "concerning treatment issues."  Complaint at 5.  Plaintiff alleges that Doctor Jackson refused to speak to him and then went to speak privately to Correctional Officer Fausi.  Id.  Thereafter, Plaintiff states he attempted to leave to return his living quarters, but Fausi "put his hand out and grabbed my upper arm to restrain me."  Id.  Unit manager Price, who is not named as a Defendant, "came to see what was happening."  Plaintiff states "upon [Fausi] being disengaged from [Plaintiff's] arm, [Fausi] then grabbed [Plaintiff] violently and forced [Plaintiff] to the ground."  Id.

Plaintiff claims several FCCC security officers then arrived and two sat on Plaintiff's shoulders and two grabbed his legs, including Defendant Kilgo.  Id.  Plaintiff alleges Kilgo placed

his knee in the back of Plaintiff's head and "ground Plaintiff's face and head into the tiled, hallway floor." Id. Kilgo "placed the knuckle of his right hand into a pressure point behind my left ear and pressed." Id. Fausi and Kilgo "then tried to break my arms to force handcuffs on [Plaintiff's] wrists." Id. "Upon putting handcuffs on [Plaintiff], the officer then picked [Plaintiff] up." Id.

Plaintiff claims he was refused "immediate medical treatment," "marched to confinement," and placed in a suicide/observation cell at the FCCC that had no bunk, desk, or stool. Id. Plaintiff alleges that Fausi told Plaintiff to remove his shoes. Kilgo then grabbed Plaintiffs' shoes and "wrenched them off [Plaintiff's feet]." Plaintiff claims he remained handcuffed for "20-23 [sic]." Id. at 6.

After "getting off the floor" and "hobbling to the door," Plaintiff alleges he looked out the door and saw Facility Administrator, Doctor Donald Sawyer present. Plaintiff claims "he brought to Sawyer's attention [Plaintiff's] injuries." Id. Plaintiff states he was kept in "confinement" for two weeks. Id. During this time, Plaintiff alleges "he refused all food for fear [he] would be poisoned." Id. Plaintiff alleges he was denied mattress, bedding, and hygiene items for 12 hours. Id. Plaintiff states he was charged with disciplinary infractions and ultimately had a disciplinary hearing, during which his charges were reduced

to minor infractions.  Id.  Plaintiff believes that because he "was victorious in a previous Civil Rights Complaint against the Institution that [he] is being harassed and punished at every opportunity."  Id.  Plaintiff seeks compensatory and declaratory relief.  Id. at 10-11.

## II.  Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.  La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).  The Court must accept all factual allegations in Plaintiff's Complaint as true and take them in the light most favorable to the plaintiff.  Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008).  Conclusory allegations, however, are not entitled to a presumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1951 (2009) (discussing a 12(b)(6) dismissal); Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

The Court employs the Twombly-Iqbal plausibility standard when reviewing a complaint subject to a motion to dismiss.  Randall v. Scott, 610 F.3d 701, 708, fn. 2 (11th Cir. 2010).  A claim is plausible where the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.

Ct. 1937, 1949 (2009). The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007); Marsh, 268 F.3d at 1036 n.16. Specifically, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citations omitted). Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. Ashcroft, 129 S. Ct. at 1949. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." See Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965, 1968-69 (citations omitted) (abrogating Conley, 355 U.S. 41 in part). Additionally, there is no longer a heightened pleading requirement. Randall, 610 F.3d at 701. Because Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) (citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)).

## III. Applicable Law and Analysis

### A. Section 1983

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

### B. Deliberate Indifference to Medical Condition Claims

The Court recognizes that the FCCC is not a prison and Plaintiff is not a prisoner. Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002). Instead, an individual who has been involuntarily civilly committed has "liberty interests under the due process clause of the Fourteenth Amendment to safety, freedom from bodily restraint, and minimally adequate or reasonable

- 6 -

training" as required to ensure safety and freedom from restraint. Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996) (citing Youngberg v. Romeo, 457 U.S. 307, 322 (1982)). See also Lavender v. Kearney, 206 F. App'x 860, 862 (11th Cir. 2006). Indeed, the Court recognizes that residents at the FCCC are afforded a higher standard of care than those who are criminally committed. See id. (wherein the Eleventh Circuit Court of Appeals held that "persons subjected to involuntary civil commitment are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").

Nonetheless, "the Eighth Amendment's deliberate indifference jurisprudence is applicable to the Fourteenth Amendment due process rights of pre-trial detainees." Id. at 863 n.2 (citing Purcell v. Toombs County, Ga., 400 F.3d 1213, 1219 (11th Cir. 2005) (other citations omitted)). Consequently, the Court examines cases addressing medical deliberate indifference claims under the Eighth Amendment for guidance in evaluating Plaintiff's claims.

A pre-trial detainee alleging a constitutional deliberate indifference claim "must sufficiently allege 'both an objectively serious medical need and that a Defendant acted with deliberate indifference to that need.'" Harper v. Lawrence County, Ala., 592 F.3d. 1227, 1233 (11th Cir. 2010) (quoting Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008) (footnote omitted)).

"[A] serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). In either situation, "the medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (citing Taylor, 221 F.3d at 1258)(alteration in original). Not all pain constitutes a serious medical need, but the failure to treat pain can constitute a serious medical need. Danley v. Allen, 540 F.3d 1298, 1311 (11th Cir. 2008).

To establish "deliberate indifference" the plaintiff must establish that Defendants "(1) had sufficient knowledge of a risk of serious harm; (2) disregarded that risk; and, (3) acted with more than gross negligence." Harper, 592 F.3d at 1233 (citations omitted). Further, the plaintiff must show that it was the "Defendant's conduct" that "caused [Plaintiff's] injuries." Id. To establish "sufficient knowledge," a Defendant "'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [ ] must also draw the inference.'" Id. (quoting Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005)). "[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each

individual Defendant must be judged separately and on the basis of what that person knows." Burnette, 533 F.3d at 1331. Further, a plaintiff must allege that the Defendant disregarded the risk of serious harm to the plaintiff with conduct that rises beyond negligence. Marsh v. Butler County, Ala., 268 F.3d 1014, 1027 (11th Cir. 2001).

Here, the Complaint is devoid of any factual allegations describing a serious medical condition for which Defendants refused Plaintiff medical treatment. Assuming *arguendo* that Plaintiff sustained some sort of injury that constituted a medical condition from the use of force described herein, the Complaint only alleges that Plaintiff was not provided "immediate" treatment following the use of force. These facts do not rise to the level of a stating a deliberate indifference to a serious medical condition claim. Accordingly, Defendants' motion is granted with respect to any such claims.

**C. Excessive Use of Force and Conditions of Confinement Claims**

The Eighth Amendment prohibits cruel and unusual punishment. Thomas v. Bryant, 614 F.3d 1288, 1303–1304 (11th Cir. 2010). Allegations about the conditions encountered in confinement fall within the category of condition of confinement claims governed by the standard set forth in Rhodes v. Chapman, 452 U.S. 337, 346 (1981). On the other hand, allegations about the severity and

manner of being restrained during the use of force incident fall within the category of the use of excessive force claims governed by Whitely, 475 U.S. at 320-21 and Hudson v. McMillian, 503 U.S. 1, 5 (1992) and their progeny for convicted prisoners, but governed by Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015) for pre-trial detainees.  William Morales v. Ellis, Case No. 2:10-cv-249-FtM-29SPC, 2011 WL 4389600 *7 (M.D. Fla. Sept. 21, 2011) (recognizing that the Fourteenth Amendment standard applies to FCCC residents alleging excessive use of force claims).

The Supreme Court recognizes that a prisoner may challenge a condition of confinement, Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  A two-prong showing is required: an objective deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities" and a subjective showing that he official had a "sufficiently culpable" state of mind.  Thomas v. Bryant, 614 F.3d 1288, 1303 (11th Cir. 2010) (citations omitted).  "Because the Eighth Amendment draws its meaning from the evolving standards of decency that mark the progress of a maturing society," the objective harm inquiry is contextual in that it is responsive to contemporary standards. Id. at 1304 (citations omitted).  "Extreme deprivations" are required to make out a claim for an unconstitutional condition of confinement.  Id. at 1304.

The totality of the circumstances at issue in this case do not amount to the "extreme deprivations" required to satisfy the objective prong under Hudson. The conditions of which Plaintiff takes issue in this action, including the deprivation of bed linens, mattress, and hygiene items while held in "observation" for a twelve-hour period of time do not amount to an extreme deprivation. See Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995) (acknowledging temporary deprivation of sinks and beds for a short period time to protect prisoner is constitutionally justifiable). Further, Defendants did not deprive Plaintiff of food during this time. Instead, Plaintiff acknowledges that *he refused* all food while held in security confinement. Nor does a two-week period of detention in confinement amount to a violation considering the facts that led to the use of force, after which Plaintiff was charged with assault in a disciplinary report presumably stemming from Plaintiff "disengaging" an officer's hand from his arm, for which Plaintiff had a disciplinary hearing.

Turning to the alleged excessive use of force claim, under Kingsley, a plaintiff must show "that the force purposely or knowingly used against him was objectively unreasonable." Id. at 2473. The inquiry into objective unreasonableness is not mechanical and depends on the facts and circumstances in each case. Id. (citations omitted). In determining the reasonableness or

unreasonableness of the officer's use of force, the Court may consider the following factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether plaintiff was actively resisting. Id. "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id.

In the Complaint, Plaintiff acknowledges that he "disengaged" Defendant Fausi "from [his] arm." Complaint at 5, ¶6, ¶10. Plaintiff told "[Fausi] not to put his hands on [him]." Id. at ¶6. In Plaintiff's response, he acknowledges that he was "frustrated" and "aggravated" with the Clinical Director (Defendant Jackson) because she refused to authorize Plaintiff's application for work because he was not in compliance with group participation. Response at 4. Thus, the facts alleged in the Complaint and Plaintiff's Response, which are accepted as true at this stage of the proceedings show Plaintiff was aggravated and actively resisted Fausi immediately before the use of force occurred. Plaintiff also received disciplinary charges for assault as a result of the incident and had a disciplinary hearing,

albeit the charges were reduced to "minor infractions." Id. at
¶¶36-37.

After Plaintiff resisted Fausi, the scenario Plaintiff
describes amounts to a rapid progression of events including Fausi
taking Plaintiff down to the ground and securing him on the ground
with the assistance of other FCCC officers, until Plaintiff could
be placed in handcuffs, and escorted to a secure room.
Significantly, despite acknowledging Plaintiff underwent spinal
surgery shortly before the use of force incident, id. at 6, the
Complaint does not allege Plaintiff suffered any physical injury
whatsoever stemming from the use of force incident. Instead,
Plaintiff alleges he suffered "mental anguish and disturbance."
Id. at 4. The facts in the Complaint do not set forth a plausible
excessive force claim. Accordingly, Defendants' motion is due to
be granted.

**D. Supervisory Liability Claims**

A defendant who occupies a supervisory position may not be
held liable under a theory of *respondeat superior* in a § 1983
action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-692
(1978); Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir.
2003); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003). To impute
a supervisor with knowledge, the knowledge "must be so pervasive
that the refusal to prevent harm rises to the level of a custom or
policy of depriving inmates of their constitutional rights."

Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1542 (11th Cir. 1994). In other words, "to establish that a defendant committed a constitutional violation in his supervisory capacity, a plaintiff must show that the defendant instituted a 'custom or policy [that] result[s] in deliberate indifference to constitutional rights or . . . directed [his] subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Goebert v. Lee County, 510 F.3d 1312, 1331 (11th Cir. 2007).

The Court finds the Complaint fails to state a claim against Defendant Sawyer, the FCCC's Facility Administrator, and Doctor Jackson, the FCCC's Clinical Director. The Complaint does not contain any allegations that Jackson or Sawyer were personally involved. Instead, it appears Plaintiff attempts to attribute liability on Defendant Sawyer as the Facility Administrator at the FCCC and Doctor Jackson as the FCCC's Clinical Administrator. The Complaint, however, fails to establish a causal connection between Sawyer, or Jackson, and the ensuing incidents because there are no factual allegations that Sawyer or Jackson failed to act in the face of notice of widespread abuse; that they instituted a custom or policy; that they directed the officers to act unlawfully; or, that they failed to stop the officers from acting unlawfully. To the extent Plaintiff faults Jackson for not talking with him about his work assignment at the FCCC, or Sawyer because Sawyer saw

Plaintiff and his unspecified injuries, such claims do not amount to Constitutional violations in this case. Complaint at 6, ¶28. As previously noted, other than a sole, vague reference to "injuries," Plaintiff does not allege or describe any physical injuries whatsoever following the use of force incident. Because the Court has determined that the Complaint fails to state a conditions of confinement claim, an excessive force claim, or a medical deliberate indifference claim, the Complaint also fails to state a claim against Sawyer or Jackson as the supervisors. Accordingly, Defendants' motion to dismiss is granted.

### E. First Amendment Retaliation Claims

Finally, Plaintiff's vague reference in the Complaint that he believes he is being "harassed and punished" at the FCCC at every opportunity because he "was victorious in a previous Civil Rights Complaint," also fails to state a claim. Complaint at 2. Plaintiff's mere speculation and belief without any facts to substantiate a causal connection between Plaintiff's victorious case and the incidents at issue *sub judice* do not state a First Amendment retaliation claim.

ACCORDINGLY, it is hereby

**ORDERED:**

1. Defendants' motion to dismiss (Doc. #28) is **GRANTED.** The Complaint is **DISMISSED** against all Defendants.

2.   The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___15th___ day of June, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: ftmp-1
Copies: All Parties of Record